**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


| | | |
|---|---|---|
| ST GEORGE INVESTMENTS LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 12-cv-9186 |
| QUAMTEL, INC., a Nevada corporation; and TRANSFER ONLINE, INC., an Oregon corporation | ) ) ) | Judge Robert M. Dow, Jr. |
| | ) ) | |
| Defendants. | ) | |


**MEMORANDUM OPINION AND ORDER**


Before the Court is a motion to dismiss for lack of personal jurisdiction [25], filed by

Defendant Transfer Online, and a motion to dismiss for failure to state a claim [27], filed by

Defendants Transfer Online and QuamTel.  For the reasons stated below, the motion to dismiss

for lack of personal jurisdiction [25] is granted.  The motion to dismiss for failure to state a claim

[27] is granted in part and denied in part.

# I.     Background[1]

On January 29, 2013, Plaintiff St George Investments LLC ("St George") filed the first amended complaint ("FAC") at issue here against QuamTel, Inc. ("QuamTel") and Transfer Online, Inc. ("Transfer Online").  St George alleges that it acquired a promissory note ("the purchased note") from QuamTel for $422,000 on December 31, 2010.[2]  FAC ¶ 9; Ex. A Exchange Agreement Mar. 30, 2012.  On April 1, 2012, St George and QuamTel entered into an exchange agreement, pursuant to which St George exchanged the promissory note for a new convertible promissory note ("the exchanged note") in the principal amount of $465,000.  FAC ¶ 10.  As set forth in the exchange agreement, QuamTel agreed to pay all amounts due under the exchanged note on or before September 30, 2012.  FAC ¶ 11.  In conjunction with the exchanged note, QuamTel issued an irrevocable instruction ("the transfer instruction" or "the instruction") to its transfer agent, Transfer Online.  FAC ¶ 12.  According to Plaintiff, the transfer instruction obligated Transfer Online to issue QuamTel common stock to St George if St George presented a properly completed conversion notice to Transfer Online.  FAC ¶ 14.  In that event, the transfer instruction required Transfer Online to issue the common stock within three trading days and specified that Transfer Online was to ignore any instruction to the contrary that it may receive

---

[1] The facts are drawn from Plaintiff's first amended complaint.  For the purposes of Defendants' 12(b)(6) motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the first amended complaint.  See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).  However, with respect to Defendant's 12(b)(2) motion, and as discussed more fully below, Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction.  See *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998).  When determining whether Plaintiff has met its burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by affidavits or exhibits.  See *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004).

[2] Although the FAC states that St George acquired the promissory note on December 31, 2012, the exchange agreement, the convertible promissory note, and the transfer instruction (all of which are attached to the FAC as Exhibits A, B, and C, respectively) confirm that this date is a typo and that St George actually acquired the promissory note on December 31, 2010.

from QuamTel. FAC ¶ 14. The transfer instruction also stated that any delay in issuing the common stock could result in economic harm to St George. FAC ¶ 16.

Plaintiff alleges that QuamTel failed to pay the amounts due under the exchanged note, FAC ¶ 17, which prompted Plaintiff to deliver to QuamTel and Transfer Online a conversion notice pursuant to the exchanged note, electing to convert $20,000 of the exchanged note's balance into shares of QuamTel common stock ("the conversion shares"). FAC ¶ 18. QuamTel and Transfer Online, however, failed to deliver the shares. By doing so, Plaintiff argues, QuamTel violated the terms of the exchanged note and both QuamTel and Transfer Online disobeyed the transfer instruction. FAC ¶¶ 19, 20. Plaintiff contends that QuamTel also violated the terms of the exchanged note and transfer instruction when it "interfered with Transfer Online and threatened to change transfer agents in order to avoid issuing the conversion shares." FAC ¶ 21.

St George filed a complaint in this case on November 15, 2012. On January 29, 2013, St George filed a five-count first amended complaint, which Transfer Online now moves to dismiss in its entirety for lack of personal jurisdiction [25]. Both Transfer Online and QuamTel move to dismiss Counts II, III, and V for failure to state a claim [27]. Count I is a breach of contract claim against QuamTel stemming from QuamTel's alleged failure to pay the amounts due under the exchanged note. Count II is a breach of contract claim against QuamTel and Transfer Online based on their alleged failure to comply with the transfer instruction, which St George maintains constituted a valid and binding contract to which it was a third-party beneficiary. Count III is an alternative claim for quasi contract, unjust enrichment, and/or quantum meruit that St George asserts against QuamTel in the event that the exchanged note did not constitute an enforceable contract between them. Count IV alleges that QuamTel and Transfer Online violated Article 8 of

the Uniform Commercial Code by failing to register the stock transfer of the conversion shares. Count V is a conversion claim against QuamTel and Transfer Online based on their alleged violations of the exchanged note and transfer instruction.

## II.    Personal Jurisdiction

### A.    Background

Rule 12(b)(2) states that an action against a party over whom the Court lacks personal jurisdiction must be dismissed.  Fed. R. Civ. P. 12(b)(2).  As mentioned, Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction.  See *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998).  When determining whether Plaintiff has met its burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by affidavits or exhibits.  See *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004).  "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction."  *Purdue*, 338 F.3d at 783.  The plaintiff is entitled to have any conflicts in the affidavits regarding relevant facts resolved in its favor.  *Id*. at 783.

Plaintiff is a limited liability company whose state of incorporation and principal place of business is Illinois.  FAC ¶ 1.  Oregon is Defendant Transfer Online's state of incorporation and principal place of business.  FAC ¶ 5.  In Transfer Online CEO Lori Livingston's declaration, attached to Transfer Online's motion to dismiss, she represents that the company is a registered securities transfer agent for certain publicly traded companies, including QuamTel, that conducts all of its business in Oregon.  Livingston Dec. ¶¶ 3, 5.  Specifically, Transfer Online conducts all

of its securities transfers, physically keeps all stock certificates in a vault, and maintains and services its computer servers in Oregon. Livingston Dec. ¶ 5. According to Ms. Livingston, Transfer Online has never conducted business in Illinois; is not registered to do business in Illinois; maintains no registered agents, employees, or property in Illinois; and no employees have travelled to Illinois on company business. Livingston Dec. ¶¶ 6-8. Transfer Online does not direct any advertising at Illinois residents and none of the publicly traded companies for which it maintains securities accounts are incorporated in Illinois. Livingston Dec. ¶ 8. Moreover, Ms. Livingston represents that Transfer Online has never had "any contracts or customers in Illinois." Livingston Dec. ¶ 6.

Plaintiff disputes two of Ms. Livingston's representations. First, St George refutes that Transfer Online has no "Illinois customers." St George has provided evidence from Transfer Online's website that suggests that Defendant has at least two customers with Illinois business addresses. Second, Plaintiff disagrees that Transfer Online has never "had any contracts" in Illinois. St George contends that the transfer instruction constituted a contract between QuamTel and Transfer Online to which an Illinois citizen (St George) was a third-party beneficiary and, therefore, constitutes an "Illinois contract."

**B.    Legal Standard**

A federal court sitting in diversity in Illinois will have personal jurisdiction over a defendant only if jurisdiction is proper under Illinois's long-arm statute. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). Thus, courts examine three "distinct obstacles to personal jurisdiction:" (1) state statutory law, (2) state constitutional law, and (3) federal constitutional law. See *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). But because the Illinois long-arm statute authorizes personal jurisdiction to the

constitutional limit, the analysis "collapse[s] into two constitutional inquiries — one state and one federal." *RAR*, 107 F.3d at 1276.

The Seventh Circuit has noted that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2003), despite a cautionary pronouncement in a 1990 Illinois Supreme Court decision suggesting that the state and federal standards may not be co-extensive. See *Rollins v. Elwood*, 565 N.E.2d 1302, 1316 (Ill. 1990); see also *Hyatt Int'l*, 302 F.3d at 715 (acknowledging *Rollins*, but noting that even if the Illinois state and federal due process standards hypothetically might diverge, no basis for such a divergence existed in the case before it). In light of the Seventh Circuit's assessment in *Hyatt* and the absence of post-*Rollins* guidance from the Illinois courts as to how Illinois and federal law may differ as a practical matter in regard to personal jurisdiction, a single due process inquiry will suffice. See *Hyatt*, 302 F.3d at 715; *Kostal v. Pinkus Dermatopathology Lab., P.C.*, 827 N.E.2d 1031, 1037 (Ill. App. Ct. 1st Dist. 2005) (noting that the court had not located any post-*Rollins* cases finding that federal due process requirements had been met where Illinois due process requirements were not).

The federal test for personal jurisdiction under the Due Process Clause of Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful

availment" requirement ensures that a non-resident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

In addition, the Supreme Court has distinguished two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984); see also *uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 425-26 (7th Cir. 2010). General jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt*, 302 F.2d at 713.

On the other hand, specific jurisdiction is more limited and a plaintiff in such circumstances must show that the alleged controversy between the parties "arise[s] out of" or "relate[s] to" the defendant's forum contacts in addition to establishing that minimum contacts exist. *Id.* The defendant's contacts with the forum state must be of a nature and quality such that the defendant has fair warning that it could be required to defend a suit in that forum. *Burger King,* 471 U.S. at 472. This ensures that jurisdiction over a defendant is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue" and that "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue Research Found.,* 338 F.3d at 780. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id*.

Even if the purposeful availment and specific jurisdiction requirements have been met, the Court also must consider whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). "Thus, courts in 'appropriate cases' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the interstate judicial system's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). These considerations are sometimes used to establish the reasonableness of jurisdiction in lieu of a strong showing of minimum contacts. *Burger King*, 471 U.S. at 477 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

Finally, because the personal jurisdiction requirement may be waived, a litigant can consent to the jurisdiction of a particular court, either expressly or impliedly. *Burger King*, 471 U.S. at 472 n.14. "For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." *Id.* (internal citations omitted).

### C.    Analysis

Plaintiff concedes that Transfer Online has not had the continuous and systematic contact with Illinois that is required to establish general jurisdiction. Instead, St George argues that Transfer Online consented to jurisdiction by signing the transfer instruction and that by doing so,

purposefully availed itself of the benefits of Illinois such that specific jurisdiction exists here, as well.

Although the transfer instruction is silent on the issue of jurisdiction, Plaintiff argues that the instruction's reference to the exchange agreement and exchanged note effectively incorporates the terms of those documents into the instruction itself. Both documents include a forum selection clause, whereby St George and QuamTel consented to personal jurisdiction in any state or federal court in Cook County, Illinois in the event of a dispute concerning those agreements. Plaintiff argues that every term contained in both the exchange agreement and the exchanged note applies with equal force to the transfer instruction simply because the instruction references those documents. Therefore, Plaintiff contends, Transfer Online agreed to be bound by the forum selection clauses in those agreements and consented to jurisdiction in every court in Cook County by signing the instruction.

Even assuming, *arguendo*, that the transfer instruction is a contract (something that Transfer Online disputes), the problem with this argument still is that "[f]or a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of the contract. Illinois requires that incorporation be clear and specific." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002). Documents are only incorporated by reference into a contract "if that intention is clearly shown on the face of the contract." *Jago v. Miller Fluid Power Corp.*, 615 N.E.2d 80, 82 (Ill. App. Ct. 2d Dist. 1993). The transfer instruction refers to the exchange agreement and the exchanged note, but the instruction does not express any intention to incorporate the terms of either document and makes no mention of their forum selection clauses. The transfer instruction begins:

> Reference is made to that certain Convertible Promissory Note dated as of December 31, 2010 (the "Note"), made by QuamTel, Inc. . . . pursuant to which [QuamTel] agreed to pay to St George Investments LLC . . . the aggregate sum of $465,000 plus interest, fees, and collection costs. The Note was issued pursuant to that certain Exchange Agreement dated as of March 30, 2012 . . . . Pursuant to the terms of the Note, at the option of the Holder, the Note may be converted into shares of the common stock . . . of [QuamTel] . . . . This irrevocable letter of instructions (this "Letter") shall serve as the authorization and direction of the [QuamTel] to Transfer Online or its successors as [QuamTel's] transfer agent . . . to issue . . . shares of Common Stock to the Holder . . . upon conversion of the Note, as follows: . . . .

FAC Ex. C at 1 Mar. 30, 2012 Transfer Instruction. The instruction then lays out the specific manner and procedures by which Transfer Online was to convert the shares upon St George's request. Quite clearly, the exchange agreement and the exchanged note are mentioned only for context; the instructions would be meaningless without reference to the underlying agreements between St George and QuamTel that they implicate.

The only other reference to the exchange agreement or the exchanged note in the transfer instruction is in a paragraph that reads: "[QuamTel] acknowledges that [St George] is relying on the representations and covenants made by [QuamTel] in this Letter and that [the transfer instructions] constitute a material inducement to [St George] to enter into the Exchange Agreement." *Id.* at ¶ 7. Plaintiff's argument that the parties' intent to incorporate the terms of all referenced documents "is clearly shown on the face of the Transfer Agreement" is therefore wholly unsupported. The transfer instruction evinces no intention whatsoever by Transfer Online to be bound by the terms of either the exchange agreement or the exchanged note. Moreover, Transfer Online was not a party to either of the referenced agreements, making it even less plausible that Transfer Online intended to be bound by the forum selection clauses in those agreements, given the likelihood that Transfer Online was not even aware of the existence of those clauses. Because the transfer instruction does not demonstrate a clear intention to

incorporate the terms of those other agreements, personal jurisdiction by consent is lacking here under Illinois law.

Absent jurisdiction by consent, St George argues that Transfer Online's signature on the transfer instruction establishes the existence of specific jurisdiction. Plaintiff acknowledges that an out-of-state party's contract with an in-state party alone is insufficient to establish the minimum contacts required for personal jurisdiction. See *Burger* King, 471 U.S. at 478; see also *Corus Intern. Trading Ltd. v. Eregli Demir ve Celik Fabrikalari, T.A.S.*, 765 F. Supp. 2d 1079, 1085 (N.D. Ill. 2011) ("Plaintiff must . . . look to more than the fact of the [contract] to establish personal jurisdiction."). Nevertheless, St George argues that the instruction's explicit recognition of the potential harm to St George in the event of a breach of the instruction is enough to hale Transfer Online into court in Illinois. Specifically, the transfer instruction states that "[Transfer Online] understand[s] that a delay in either the crediting of the Conversion Shares or the delivery of certificates, as the case may be, could result in economic loss to [St George] and that time is of the essence in [Transfer Online's] processing of a Conversion Notice." FAC Ex. C ¶ 3 Mar. 30, 2012 Transfer Instruction. The instruction also says that "[t]he parties hereto specifically acknowledge and agree that in the event of a breach or threatened breach by a party hereto of any provision hereof, [St George] will be irreparably damaged." *Id.* ¶ 8. Although "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" may indicate that a defendant purposely established minimum contacts with a forum, (*id.* at 479), the Court fails to see how these clauses demonstrate Transfer Online's purposeful availment. It is a truism that a party may be harmed in the event of a breach. That the instruction explicitly says so, therefore, does not advance Plaintiff's argument as to jurisdiction. In fact, the specific language to which St George points

appears to contemplate the type of relief available – temporary injunctive relief based on irreparable harm – rather than the jurisdiction or venue in which any relief would be sought. Moreover, the discussion of "future consequences" in *Burger King* makes clear that the Supreme Court was referring to the future consequences of the contract itself and not of a breach (as Plaintiff argues). *Burger King*, 471 U.S. at 479 ("[W]e have emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.") (internal citations omitted).

In assessing whether specific jurisdiction exists, Illinois courts often look to "who initiated the transaction, where the contract was entered into, where the performance of the contract was to take place, and where the contract was negotiated." *Citadel*, 536 F.3d at 762. Here, Transfer Online did not initiate the transaction and did not engage in any negotiation with St George. QuamTel and St George may have negotiated the terms of the instruction, but the record suggests that Transfer Online had no involvement in the negotiation process. As far as the Court can tell, Transfer Online had no direct contact with St George at all. As QuamTel's securities transfer agent, Transfer Online seems to have had no control over the beneficiaries of the stock transfers that QuamTel ordered it to effectuate. In that sense, Transfer Online's contact with Illinois was a mere fortuitous event that does not demonstrate a real relationship with the state for personal jurisdiction purposes. See *Purdue Research Found.*, 338 F.3d at 780. To conclude otherwise would be to determine that Transfer Online is subject to personal jurisdiction in any state in the union, so long as QuamTel instructs Transfer Online to electronically transfer common stock to an entity (with whom *QuamTel*, not Transfer Online, has contracted) in that state. The transfer instruction identifies St George as an Illinois corporation, but outside of that,

it seems that Transfer Online would not have even known that QuamTel's instructions concerned the state of Illinois in any way. Transfer Online suggests, and St George does not refute, that its CEO Ms. Livingston signed the transfer instruction from Oregon, (presumably then faxed it back to QuamTel), and that it was to electronically transfer the stocks to St George from its office in Oregon. In the end, Plaintiff's argument for the existence of specific jurisdiction rests solely on the fact that Transfer Online signed the transfer instruction. Because the law is clear that this does not constitute purposeful availment, the Court concludes that personal jurisdiction is lacking and dismisses Transfer Online from the case. See *Northern Grain Marketing v. Greving*, 2014 WL 595767, at *5 (7th Cir. Feb. 18, 2014) ("With respect to contract disputes, 'contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum.") (quoting *Purdue Research Found.*, 338 F.3d at 781).

In a footnote, Plaintiff seeks to avoid this result by requesting the opportunity to conduct jurisdictional discovery in the hope of finding grounds for general jurisdiction over Defendant. To the extent that this request has been properly raised, it is denied. The Seventh Circuit has held that "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Here, Plaintiff represents that, after reviewing Transfer Online's client list, it uncovered that Transfer Online has two clients with Illinois addresses. In light of this revelation, Plaintiff seeks to obtain discovery to determine whether, in fact, these (and potentially other) contacts with the state raise to the level of "continuous and systematic" such that general jurisdiction could exist here. Particularly in light of Ms. Livingston's affidavit regarding the absence of Transfer Online's purposeful contact with Illinois, it is simply not plausible that additional discovery from

Defendant would reveal that Transfer Online has the extensive contact with the state required to establish general jurisdiction. As such, the Court in its discretion denies the request for jurisdictional discovery.

Because the Court lacks personal jurisdiction over Transfer Online, it is not permitted to assess the merits of St George's claims. See *Yassan v. J.P. Morgan Chase and Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013). Accordingly, the case is dismissed as to Transfer Online without prejudice to refiling in a forum that may exercise personal jurisdiction over Defendant.

## II.     Motion to Dismiss

### A.     Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiffs' complaint and draws all reasonable inferences in their favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

### B. Analysis

Having dismissed Transfer Online as a Defendant for lack of personal jurisdiction, the Court analyzes Defendants' joint 12(b)(6) motion only with respect to QuamTel. QuamTel seeks dismissal of Counts II, III, and V of Plaintiff's FAC and asks the Court to preclude Plaintiff from seeking certain types of relief. Defendant argues that St George's breach of contract claim concerning the transfer instruction (Count II) fails as a matter of law because the transfer instruction is not a contract. Defendant contends that St George's quasi contract, unjust enrichment, and/or quantum meruit claim (Count III) should be dismissed, because the FAC fails to specify appropriately that it is an alternative claim to St George's breach of contract claim and, thus, cannot coexist with it. Finally, Defendant submits that St George's conversion claim in Count V should be dismissed, because the *Moorman* doctrine bars recovery in tort for purely economic losses. In addition, Defendant argues that Plaintiff improperly seeks specific performance in Count I, injunctions in Counts I and II, punitive damages in Count V, and monetary penalties in its breach of contract claims. According to QuamTel, these types of relief are improper, and thus QuamTel asks the Court to preclude St George from pursuing them.

### 1.    Breach of the Transfer Instruction (Count II)

QuamTel argues that the transfer instruction lacks the essential hallmarks of a contract – offer, acceptance, consideration – and, consequently, that any failure to carry out that instruction cannot support a breach of contract claim.  QuamTel contends that this instruction to its agent, Transfer Online, was simply that – an instruction – and that neither QuamTel nor Transfer Online made the other an offer, neither party accepted an offer, and no consideration existed.  Plaintiff disagrees, arguing that the transfer instruction was a valid, binding, and enforceable contract to which it was a third-party beneficiary.

"Under Illinois contract law, a binding agreement requires a meeting of the minds or mutual assent as to all material terms." *Abbott Laboratories v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999).  "To determine whether the parties intended to be bound by [an] alleged contract, [courts] look not to the parties' subjective intent but rather to objective evidence of their intent." *Cohen Dev. Co. v. JMJ Properties Inc.*, 317 F.3d 729, 735 (7th Cir. 2003).

QuamTel argues that the transfer instruction does not demonstrate mutual assent, because these instructions were "issued" rather than "offered," and therefore Transfer Online could not have "accepted" them.  The Court rejects this contention, which either suggests that Transfer Online had no choice but to be bound by the instruction's terms or that it was not, in fact, bound by them at all.  The transfer instruction itself belies both suggestions.  The instruction contains the signature of Transfer Online's CEO Lori Livingston, which appears directly below language that explicitly states that "[b]y signing below, each individual executing this Letter on behalf of an entity represents and warrants that he or she has authority to so execute this Letter on behalf of such entity and *thereby bind such entity to the terms and conditions hereof*."  FAC Ex. C ¶ 10 Mar. 30, 2012 Transfer Instruction (emphasis added).  Moreover, the letter contemplates the

possibility of a breach, which necessarily suggests that the document imposes obligations on the parties. *Id.* ¶ 8 ("The parties hereto specifically acknowledge and agree that in the event of a breach or threatened breach by a party hereto of any provision hereof, the Holder will be irreparably damaged, and that damages at law would be an inadequate remedy if this Letter were not specifically enforced."). Accordingly, the Court concludes that St George's FAC sufficiently alleges that the transfer instruction reflects an offer from QuamTel, which was accepted by Transfer Online.

Even if the instruction reflects the parties' mutual assent, QuamTel argues that because the letter is silent as to what Transfer Online was to receive from QuamTel in return for performing the stock transfer, the letter lacks consideration and cannot constitute a binding contract. The Court disagrees. "Consideration is 'a bargained-for exchange whereby the promisor . . . receives some benefit, or the promisee . . . suffers detriment." *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co., Ltd.*, 707 F.3d 853, 866 (7th Cir. 2013) (quoting *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624 (Ill. 2005)). In order to accept QuamTel's argument, the Court would have to conclude that, in essence, Transfer Online was simply doing QuamTel a favor when it agreed to act as its transfer agent. Common sense dictates that this was a service agreement, executed as part of an on-going business relationship, pursuant to which QuamTel would have compensated Transfer Online for its stock transfer services. Such an arrangement qualifies as consideration. Ultimately, whether consideration existed and whether the transfer instruction constituted a valid and enforceable contract are questions of fact that are premature at this stage of the litigation. At this juncture, all reasonable inferences must be drawn in St George's favor, which does not yet need to prove the existence of a contract but only make a well-pled allegation as to the existence (and breach) of one.

Accordingly, the Court concludes that St George has stated a claim for breach of contract in Count II.

QuamTel argues that even if the breach of contract claim in Count II remains, St George's allegation that QuamTel breached the transfer instruction's implied covenant of good faith and fair dealing must be stricken. St George's complaint alleges that "QuamTel materially breached the Transfer Instructions, and the implied covenant of good faith and fair dealing therein, by interfering with Transfer Online and providing Transfer Online with instructions contrary to those provided in the Transfer Instructions." FAC ¶ 36. Defendant argues that the implied covenant of good faith and fair dealing can only be breached if a party has a discretionary obligation pursuant to a contract. See *Gardner Fire Protection Dist. v. Gardner Volunteer Fire Dept.*, 2014 WL 631471, at *8 (Ill. App. Ct. 3d Dist. Feb. 13, 2014) ("Many courts have noted that the duty of good faith and fair dealing is implied in every contract and requires a party vested with contractual discretion to exercise it reasonably, and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.") (collecting cases). Because St George alleges throughout its complaint that QuamTel's obligations pursuant to the agreements were explicit and mandatory (*i.e.,* non-discretionary), QuamTel argues that St George's good faith and fair dealing claim fails. St George does not contest QuamTel's contention that a party can only breach the duty of good faith and fair dealing while engaging in a discretionary function, but clarifies in its opposition brief that it "included this claim as an alternative form of relief should the Court find that Defendants did indeed have discretion to delay or contractually refuse transfer of the requested shares." Pl. Reply Br. at 4 n.2.

The Court sees no problem with Plaintiff's good faith and fair dealing claim. The Federal Rules of Civil Procedure explicitly permit alternative and inconsistent statements of a claim. Rule 8(d)(2) states: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separates ones." Fed. R. Civ. P. 8(d)(2). And Rule 8(d)(3) states that "[a] party may state as many separate claims or defense as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). In light of these Rules and Defendant's inability to point to any contrary authority, the Court concludes that Plaintiff may plead claims for breach of contract and, in the alternative, breach of the implied covenant of good faith and fair dealing. QuamTel's motion to dismiss Count II is therefore denied in its entirety.

### 2. Quasi Contract, Unjust Enrichment, and/or Quantum Meruit (Count III)

QuamTel argues that Count III should be dismissed because of a technicality. QuamTel concedes that a "a party may plead claims for breach of contract and quasi-contractual relief in the alternative," but cites to cases in this district in which judges dismissed such a claim because the plaintiffs, while purporting to plead their quasi-contractual claims in the alternative, improperly incorporated the allegations from their breach of contract claims, including that a contract exists. See *Telefonix, Inc. v. Response Engineering, Inc.*, 2012 WL 5499437, *5 (N.D. Ill. Nov. 13, 2012) ("Although Defendants argue that this is a 'hyper technical contention,' this error in their pleadings is sufficient to dismiss their claims without prejudice."); *Global Tech. & Trading, Inc. v. Satyam Comp. Servs. Ltd.*, 2009 WL 4788693, at *2 (N.D. Ill. Dec. 9, 2009) ("While the reference to the allegations of contract may have been simply an error on Plaintiffs' part, the incorporation of these allegations of contract militates in favor of dismissal.").

Unlike in those cases, however, St George's quasi-contractual claim explicitly states that this claim is asserted "[i]f for any reason the trier-of-fact in this case fails to identify the existence of an enforceable and binding contract between St George and QuamTel." FAC ¶ 44. So while Count III does purport to "incorporate[] by this reference the allegations set forth" in the contract claims, Plaintiff – unlike the plaintiffs in *Telefonix* and *Global Tech* – makes clear that its quasi-contractual claim does not include an allegation that a valid contract exists. "Under [the doctrine of pleading in the alternative], a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative." *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Accordingly, the Court denies QuamTel's motion to dismiss Count III.

### 3. Conversion (Count V)

QuamTel argues that the economic loss, or "*Moorman*," doctrine prohibits St George's conversion claim. In *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982), the Illinois Supreme Court held "that recovery that is solely economic in nature must be had in contract rather than in tort." *Mutual Service Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 615 (7th Cir. 2001). "*Moorman* itself was a products liability case . . . but its ruling has since been extended to the provision of services as well." *Id.* However, "Illinois recognizes three general exceptions to the doctrine, which its Supreme Court recently set forth as follows: '(1) where the plaintiff sustained damage, *i.e.,* personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.,* fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Catalan v. GMAC Mortg.*

*Corp.*, 629 F.3d 676, 693 (7th Cir. 2011) (quoting *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 843 N.E.2d 327, 333-34 (Ill. 2006)).

Plaintiff invites the Court to create an additional broad exception to the doctrine for intentional torts (or at a minimum, the intentional tort of conversion). Illinois state courts, however, have not addressed the issue, and St George has failed to convince the Court of the *Moorman* doctrine's inapplicability to the specific allegations at issue in this case. "To prove conversion, a plaintiff must establish that: (1) he has a right to the property; (2) he has an absolute unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008). Here, St George alleges that it executed a promissory note, pursuant to which QuamTel was contractually obligated to pay St George a certain amount of money by a particular date. When QuamTel allegedly breached the agreement by failing to pay on time, St George brought claims for both breach of contract and conversion arising from the exact same conduct. But "*Moorman* dictates that, when a contract sets out the duties between the parties, recovery should be limited to contract damages, even though recovery in tort would otherwise be available under the common law." *R.J. O'Brien & Associates, Inc. v Forman*, 298 F.3d 653, 657 (7th Cir. 2002). In other words, the *Moorman* doctrine "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations," (*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012)), which is exactly what St George improperly attempts to do here.

Plaintiff argues that the Court should permit its tort claim anyway, and should follow the holding in *Vanco US, LLC v. Brink's Inc.*, 2010 WL 5365373, at *6 (N.D. Ill. Dec. 2010), the one case in this district that deemed *Moorman* inapplicable to a plaintiff's conversion claim. But

*Vanco* dealt with vastly different allegations than those at issue here. There, the court deemed *Moorman* inapplicable to allegations rooted in fraud and deceptive business practices, because the court concluded that that "is not the type of 'economic loss' contemplated by the doctrine." *Id.* And the other two cases in this district that have considered the issue both concluded that the *Moorman* doctrine does bar conversion claims. See *Lansing v. Carroll*, 2012 WL 4759241, at *3 (N.D. Ill. Oct. 5, 2012) (barring conversion claim where plaintiff sought "recovery for harm to a contract-like interest"); *Braman v. Woodfield Gardens Assoc., Realcorp Investors I*, 715 F. Supp. 226, 229 (N.D. Ill 1989) (barring conversion claim where "plaintiffs' alleged injuries amount[ed] to nothing more than economic loss.").

"The duty of a federal court in a diversity suit is to predict what the state's highest court would do if presented with the identical issue." *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). Although the Illinois Supreme Court has not confronted this precise issue, it has explicitly stated that *Moorman* applies with equal force to cases where a defendant's conduct is negligent and those where, like here, the conduct is alleged to have been intentional. "Simply characterizing a breach of contract as 'wilful and wanton' does not change the fact that plaintiffs are only seeking recovery for harm to a contract-like interest." *Morrow v. L.A. Goldschmidt Associates, Inc.*, 492 N.E.2d 181, 185 (Ill. 1986). In light of *Morrow*, and for the other reasons given, the Court concludes that St George's conversion claim is an attempt to do exactly what *Moorman* prohibits by bringing a tort claim for purely economic losses arising out of QuamTel's failure to perform contractual obligations

As a fallback, Plaintiff argues that even if the *Moorman* doctrine is applicable to conversion claims, the Uniform Commercial Code ("UCC") imposed a separate and distinct duty on QuamTel, QuamTel's breach of which saves St George's conversion claim. Plaintiff bases its

argument on the fact that the exceptions to the *Moorman* doctrine are "each rooted in the general rule that '[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for negligent breach of that duty.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (quoting *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994)). The Seventh Circuit has said that "[t]o determine whether the *Moorman* doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of the contract or existed independent of the contract." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Catalan*, 629 F.3d at 693). Answering that question in the affirmative, courts have occasionally permitted a plaintiff to proceed with a negligence claim seeking purely economic losses, where a defendant breached a duty independent of the duty imposed by the parties' contract. See *e.g.*, *Congregation of the Passion*, 636 N.E.2d at 514 (declining to extend the *Moorman* doctrine to accountant malpractice because the accountant's duty of care arose outside of the contract); *Collins v. Reynard*, 607 N.E.2d 1185, 1186 (Ill. 1992) (declining to extend the *Moorman* doctrine to attorney malpractice for the same reason). According to St George, Article 8 of the UCC required QuamTel "to register transfer of stock when presented with a request to register." See 810 ILCS 5/8-401. Because this duty is separate from the duties imposed by the contract itself, St George argues that *Moorman* is inapplicable here and its tort claim is proper.

Plaintiff's argument fails, however, because Count V is for conversion, not negligence. Therefore, the independent-duty inquiry of *Congregation of the Passion* and *Collins* has no bearing here. And even if Count V were a negligence claim (it isn't), the *Moorman* doctrine still would bar it under these facts. The *Moorman* doctrine is premised on the broad notion that "contract law and the Uniform Commercial Code offer the appropriate remedy for economic

losses occasioned by diminished commercial expectations." *In re Chicago Flood Litigation*, 680 N.E.2d 265, 275 (Ill. 1997). "In confining recovery for economic losses to the realm of contract law, the Illinois Supreme Court in *Moorman* sought to maintain the integrity of a 'carefully articulated' body of rules in the UCC . . . ." *Elizabeth State Bank*, 265 F.3d at 617 (citing *Moorman*, 435 N.E.2d at 447). In other words, that the UCC governed the contract does not alter the *Moorman* analysis to permit Plaintiff's tort claim for contract-based economic losses. Instead, a breach of that independent, UCC-imposed duty supports a separate contract-based cause of action, distinct from a mere breach of contract, which Plaintiff has appropriately brought in Count IV (Failure to Register Transfer in Violation of UCC).

Accordingly, QuamTel's motion to dismiss Count V is granted and St George's conversion claim is dismissed.

### 4. Forms of Relief

#### 1. *Penalties in Counts I, II, and IV*

QuamTel argues that the Court should strike St George's request for penalties in Counts I (breach of the exchanged note), II (breach of the transfer instruction), and IV (failure to register the transfer in violation of the UCC) from its FAC, because this relief is barred as a matter of law with respect to contract claims. Although neither Counts I, II, nor IV specifies the precise penalties that St George is seeking, QuamTel seeks to bar them from pursuing the penalties outlined in the exchanged note. Paragraph 2(b) of the exchanged note provides that "[i]n the event [QuamTel] fails to deliver the Conversion Shares on or before the Required Delivery Date, in addition to all other remedies available to [St George] . . . , a penalty equal to 1.5% of the Conversion Amount shall be added to the balance of this Note per day until such Conversion Shares are actually delivered . . . ." FAC Ex. B, Exchanged Note ¶ 2(b) Mar. 30, 2012. In

Illinois, "damages may not be recovered in an action for breach of contract if the purpose of those damages is merely to secure a party's performance of the agreement." *People ex rel. Dept. of Public Health v. Wiley*, 843 N.E.2d 259, 271 (Ill. 2006). "Such damages are considered 'an unenforceable penalty unless: (1) the amount so fixed is a reasonable forecast of just compensation of the harm that is caused by the breach; and (2) the harm caused is difficult or impossible to estimate." *Id.* (quoting *Hidden Grove Condominium Ass'n v. Crooks*, 744 N.E.2d 305, 306 (Ill. 2001)). QuamTel argues that the request for penalties in the complaint should be stricken because the exchanged note's penalty provision is not a reasonable forecast of just compensation for a breach and that the harm caused by a breach would not be difficult to estimate.

St George argues that these penalties are appropriate, because they are akin to "[a] late charge or service fee intended to compensate a lender for the extra time and effort expended as a result of the borrower's tardiness in making payments in an attempt to provide for liquidated damages . . . ." Citing 22 Am. Jur. 2d Damages § 550. In Illinois, the reasonableness of a liquidated damages or penalty provision is subject to a two-part test: "(1) whether the amount fixed is reasonable in light of the anticipated or actual loss caused by the breach; and (2) the difficult of proving a loss has occurred, or establishing its amount with reasonable certainty." The difficulty or ease of proof of loss is a matter to be determined at the time of contract – not . . . at the time of the breach." *Pav-Saver Corp. v. Vasso Corp.*, 493 N.E.2d 423, 427 (Ill. App. Ct. 1986). Further, "[t]he burden of proving that a liquidated damages clause is void as a penalty rests with the party resisting its enforcement." *Id.* St George argues that the penalty provision was reasonable when the contract was executed, because at that time it was difficult to quantify a prospective breach in light of unknown market fluctuations, stock values, and opportunities to

sell.  QuamTel disagrees, arguing that the penalty was a "late charge" rather than liquidated damages, and that regardless, the penalty is unenforceable.

Having considered the parties' arguments, the Court concludes that Defendant has not met its burden of showing that this penalty and/or liquidated damages provision is unreasonable or otherwise void.  Factual disputes exist regarding the intended purpose of the penalty provision and the parties' abilities to predict the value of a potential breach at the time they entered into a contract.  Moreover, Defendant has not advanced an argument that provisions of this type are *per se* unreasonable.  Besides, by signing the exchanged note, QuamTel knowingly and voluntarily agreed to be subject to the penalty provision that it now wishes to strike  Accordingly, it would be premature for the Court to rule on the availability of contractual penalties at this stage of the litigation.  Defendant's motion to strike Plaintiff's requests for penalties from its FAC is therefore denied.

### 2. *Specific Performance in Count I*

Defendant's argument for the dismissal of Count I's request for specific performance is rooted in semantics.  QuamTel argues that because Count I concerns a breach of the exchanged note, yet prays for specific performance of the *exchange agreement*, the Court should deny St George's request for specific performance at this stage.  St George argues that QuamTel misreads its FAC, that the exchange agreement and exchanged note were drafted and intended to be read together, and that Count I's request for specific performance is proper.  The Court agrees.  Count I reads: "In the alternative or as an additional form of relief, the Exchanged Note allows St George to enforce specifically the terms and provisions of that agreement, and St George is unable to obtain the Conversion Shares without QuamTel's cooperation and performance . . . Accordingly, St George prays for a judgment granting specific performance and

ordering QuamTel to comply with the Exchange Agreement and deliver the Conversion Shares."

FAC ¶¶ 31, 33. The Court sees no facial ambiguity in Plaintiff's request for relief, such that it would be appropriate to strike it at this stage. Accordingly, Defendant's motion to strike it is denied.

### 3. Injunction in Counts I and II

Finally, Defendant moves to strike the portions of Count I and II that seek to "enjoin[] QuamTel from further breaching the Exchanged Note, including interfering with or changing transfer agents." QuamTel argues that St George's claim is legally defective, because the exchanged note permits QuamTel to change transfer agents and because "the position that a single putative shareholder . . . may enjoin a publicly traded issuer . . . from changing its transfer agent based on a purported breach of a bilateral contract is implausible." St George clarifies that it does not seek to enjoin QuamTel from changing transfer agents, but rather – in accord with the terms of the exchanged note – to prevent them from doing so without providing the new agent with the irrevocable instruction required by the exchanged note. See FAC Ex. B Exchanged Note ¶ 7(o) Mar. 30, 2012 ("Each of the following shall be deemed an "Event of Default" under this Agreement: . . . In the event that the Borrower proposes to replace its transfer agent, the Borrower fails to provide, prior to the effective date of such replacement, a fully execute Transfer Agent Letter (as defined by the Exchange Agreement) in substantially the form initially required by the Exchange Agreement."). In other words, St George seeks an injunction to prevent QuamTel from further violating St George's contractual rights pursuant to the exchange agreement, relief which QuamTel does not contest may be properly sought here. See FAC ¶ 21 ("QuamTel, in violation of the Exchanged Note and Transfer Instruction, has interfered with Transfer Online and threatened to change transfer agents in order to avoid issuing the Conversion

Shares.") For that reason, Defendant's motion to strike Plaintiff's request for injunctive relief in Counts I and II is denied.

**III.    Conclusion**

For the reasons stated above, Transfer Online's motion to dismiss for lack of personal jurisdiction [25] is granted, and Transfer Online is dismissed as a defendant in this case without prejudice to St George refiling its claim against Transfer Online in a forum that may exercise personal jurisdiction. QuamTel's motion to dismiss for failure to state a claim [27] is granted in part and denied in part.

Dated: March 3, 2014

_____
Robert M. Dow, Jr.
United States District Judge